UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CHUNG YU-HOLGUIN,

        *Petitioner*,

            **MEMORANDUM & ORDER**

    v.

            13-cr-259 (KAM)

UNITED STATES OF AMERICA,     17-cv-7608 (KAM)

        *Respondent*.
--------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

       On January 23, 2015, the Court sentenced Chung Yu-Holguin ("Mr. Yu-Holguin"), a U.S. permanent resident, to eight-and-a-half months in custody for conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2). On July 21, 2015, six months after the Court entered judgment, Mr. Yu-Holguin filed a notice of appeal. The Government moved to dismiss Mr. Yu-Holguin's appeal as untimely filed. Mr. Yu-Holguin conceded that the notice of appeal was untimely but asked that the court hear it in the interests of justice.

       The Second Circuit granted the Government's motion to dismiss Mr. Yu-Holguin's appeal, but further ordered that the case be remanded to the district court with instructions to convert Mr. Yu-Holguin's notice of appeal into a petition for habeas corpus, after first providing Mr. Yu-Holguin the opportunity to withdraw the notice rather than have it so recharacterized. On remand, the district court granted Mr. Yu-

Holguin the opportunity to withdraw his notice of appeal; Mr. Yu-Holguin did not withdraw his notice of appeal, and separately consented to its conversion into a § 2255 petition.

Presently before the Court is Mr. Yu-Holguin's petition to vacate his sentence pursuant to 28 U.S.C. § 2255. Mr. Yu-Holguin alleges that his trial counsel, Lawrence Dubin, Esq. ("Mr. Dubin"), provided ineffective assistance: (1) at pleading, by misinforming Mr. Yu-Holguin of the immigration consequences of his plea; (2) at sentencing, for unspecified reasons; and (3) in failing to file a requested appeal. For the reasons set forth below, the Court finds that Mr. Yu-Holguin's claims are without merit. Mr. Yu-Holguin's petition is DENIED.

## Background

Mr. Yu-Holguin immigrated to the United States from the Dominican Republic in September 2005. (ECF No. 429, Response to Order to Show Cause, Ex. C (Sentencing Transcript) ("Sent. Tr."), at 44:11-12.) Mr. Yu-Holguin is a permanent resident of the United States. (*Id.* at 44:13-14.) Although Mr. Yu-Holguin passed his naturalization examination, he had not yet been sworn in as of his sentencing. (*Id.* at 44:14-16.)

### I.   The Indictment

On November 14, 2013, a grand jury in the Eastern District of New York returned an indictment charging Mr. Yu-Holguin with one count of Conspiracy to Commit Access Device

Fraud in violation of 18 U.S.C. § 1029.  (ECF No. 107,
Superseding (S-2) Indictment ("Ind."), ¶ 10.)  The indictment
arose from a global fraud scheme to steal bank account numbers
from foreign banks and then use the compromised account numbers
to withdraw funds from automated teller machines ("ATMs")
totaling approximately $2.7 million, and causing greater losses.
(*Id.* ¶¶ 1-10.)  The indictment alleged that, as part of this
scheme, "[Mr. Yu-Holguin] [personally] conducted approximately
five withdrawals totaling approximately $4,010 using [a]
compromised [bank] account number from an ATM located in
Manhattan, New York" on or about February 19, 2013. (*Id.* ¶
11(c).)  (Mr. Yu-Holguin, however, later conceded his personal
responsibility for $60,000 in losses.  (ECF No. 313, Defendant's
Sentencing Letter).)

## II.  The Plea

On January 31, 2014, Mr. Yu-Holguin agreed to plead
guilty to the charged access device fraud conspiracy.  (ECF No.
429, Response to Order to Show Cause, Ex. A (Plea Agreement)
("Plea Ag."), ¶ 1.)  The plea agreement indicated that Mr. Yu-
Holguin would face an estimated advisory Guidelines range of 37
to 46 months.  (*Id.* ¶ 2.)  Mr. Yu-Holguin "agree[d] not to file
an appeal or otherwise challenge, by petition pursuant to 28
U.S.C. § 2255 or any other provision, the conviction or sentence

in the event that the Court impose[d] a term of imprisonment of 51 months or below." (*Id*. ¶ 4.)

Mr. Yu-Holguin's plea agreement set forth the potential immigration consequences of his guilty plea. By signing, Mr. Yu-Holguin acknowledged that he "may be subject to removal [from the United States]." (*Id*. ¶ 4.) Specifically,

> [Mr. Yu-Holguin] recognize[d] that pleading guilty may have consequences with respect to [his] immigration status if [he] [was] not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which [Mr. Yu-Holguin] [was] pleading guilty. Indeed, because [Mr. Yu-Holguin] [was] pleading guilty to a violation of 18 U.S.C. §1029(b)(2), removal [was] presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and [Mr. Yu-Holguin] underst[ood] that no one, including [his] attorney or the District Court, [could] predict with certainty the effect of [his] conviction on [his] immigration status.

(*Id*. ¶ 14.) Mr. Yu-Holguin "nevertheless affirm[ed] that [he] want[ed] to plead guilty regardless of any immigration consequences that [his] plea may entail, even if the consequence [was] [his] automatic removal from the United States." (*Id.*)

Mr. Yu-Holguin appeared for a plea hearing before the undersigned judge the same day. Mr. Yu-Holguin represented that he understood the plea agreement and its terms:

> THE COURT: I'm going to show you what's been marked as Court Exhibit No. 1. It's [a plea] agreement that you reached with the government. I [would] like to ask you whether your signature appears on that document.
>
> MR. YU-HOLGUIN: Yes.
>
> THE COURT: Is that your signature?

MR. YU-HOLGUIN: Yes, it is.

THE COURT: Before you signed this document, did you have a chance to read it and discuss it with your lawyer?

MR. YU-HOLGUIN: I did.

THE COURT: Do you understand what this agreement provides?

MR. YU-HOLGUIN: Yes, Your Honor.

THE COURT: And by signing this agreement, do you intend to indicate to me that you both understand the agreement and you agree to the terms?

MR. YU-HOLGUIN: Yes.

(ECF No. 429, Response to Order to Show Cause, Ex. B (Plea Transcript) ("Plea Tr."), at 10:01-17.)  Mr. Yu-Holguin confirmed that he understood he faced an estimated advisory Guidelines sentencing range of 37 to 46 months' imprisonment (*id.* at 15:03-10) and that, by entering into the plea agreement, he waived his right to appeal or challenge pursuant to 28 U.S.C. § 2255 his conviction or sentence in the event the Court imposed a sentence of 51 months or less (*id.* at 15:11-18).

Mr. Yu-Holguin also confirmed that he understood the potential immigration consequences of his plea.  Mr. Yu-Holguin knew he could be subject to removal from the United States and had discussed the removal provision with his attorney:

THE COURT: [A]re you a United States Citizen?

MR. YU-HOLGUIN: I am not.

THE COURT: So what happens is certain types of crimes, once you are convicted, will subject you to removal from the United States and this may well be one of those offenses that will result in your removal from the United States. You will not be allowed to reenter without permission of

the United States Government.  Have you discussed this provision of your sentencing and plea with your lawyer?

MR. YU-HOLGUIN: I have.

THE COURT: Do you understand that you would be subject to removal from the United States?

MR. YU-HOLGUIN: Yes, Your Honor.

THE COURT: And, Counsel, are you satisfied that you have discussed the immigration ramifications and exposure that he faces if he pleads guilty?

MR. DUBIN: Yes, I am, Judge.

(*Id.* at 12:20-13:12.)

Finally, Mr. Yu-Holguin confirmed the voluntary and knowing nature of his plea and expressed that no one made any promises to him about what sentence he would receive:

THE COURT: Mr. Yu-Holguin, what is your plea, sir?

MR. YU-HOLGUIN: Guilty.

THE COURT: Are you making the plea of guilty voluntarily and of your own free will?

MR. YU-HOLGUIN: Yes, Your Honor.

THE COURT: Did anyone threaten you or force you to plead guilty?

MR. YU-HOLGUIN: No, Your Honor.

THE COURT: Other than your agreement with the government, did anyone make any promise to you that has caused you to plead guilty?

MR. YU-HOLGUIN: No, Your Honor.

THE COURT: Did anyone make any promise to you about what your sentence will be?

MR. YU-HOLGUIN: No, Your Honor.

(*Id.* at 17:17-18:06.)  After Mr. Yu-Holguin allocuted to his conduct in connection with the charged access device fraud conspiracy, the Court accepted his plea of guilty.

## III. The Sentence

Mr. Dubin filed a submission on Mr. Yu-Holguin's behalf in advance of sentencing.  (*See generally* ECF No. 313, Defendant's Sentencing Letter.)  Mr. Dubin stated that despite the conspiracy's responsibility for $2.7 million in losses, the loss attributed solely to Mr. Yu-Holguin was $60,000, and he received only $5,000 for his involvement.  (*Id.* at 1.)  Mr. Dubin stressed Mr. Yu-Holguin's relatively minor role in the conspiracy, work ethic and education, financial contributions to his family, and the immigration consequences of his plea.  (*Id.*) Notably, Mr. Dubin's letter stated that "a prison sentence in excess of one year would constitute an 'aggravated felony' for immigration purposes and would effectively destroy any chance [Mr. Yu-Holguin] might have of avoiding deportation."[1]  (*Id.* at 2.)  Mr. Dubin requested a non-Guidelines sentence of six months in custody and three years of supervised release.  (*Id.*)

Mr. Yu-Holguin appeared before the undersigned judge for sentencing on January 23, 2015.  (*See generally* Sent. Tr.)

---

[1] This statement does not comport with the Immigration and Nationality Act's definition of an "Aggravated Felony."  *See* 8 U.S.C. § 1101(a)(43) (defining "aggravated felony" to include "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" and "a theft offense . . . for which the term of imprisonment [is] at least one year").

Mr. Yu-Holguin confirmed that he did not wish to contest the guilty plea he entered on January 21, 2014. (Sentencing Tr. at 6:15-8:03.) Mr. Dubin's statements regarding the immigration consequences of Mr. Yu-Holguin's conviction are particularly relevant to the instant action. Mr. Dubin reiterated his concern that a sentence of more than one year might hinder Mr. Yu-Holguin's ability to remain in the United States. Mr. Dubin stated that in a different criminal action in the Southern District of New York, he had recently:

> [A]sked for a flat sentence of a year . . . because [he] was concerned that anything over a year automatically qualified as an aggravated felony for immigration purposes, and would make it more likely than less likely that the party could be subjected to immigration. . . . I'm just saying that the Court has the discretion now, and I would ask your Honor to impose the sentence that I suggested in the letter; at least . . . put [Mr. Yu-Holguin] in a position to have a fighting chance to stay here.

(*Id.* at 14:18-15:18.) In response to Mr. Dubin's statement, the Government stated that though "[it did] take to heart . . . the immigration issues in this case[,] . . . [it did not] know whether or not a sentence of a year or less would, in fact, shield [Mr. Yu-Holguin] from deportation." (*Id.* at 16:06-09.)

In pronouncing Mr. Yu-Holguin's sentence, the Court noted that it "[does not] have the authority to determine [Mr. Yu-Holguin's] immigration status in this country[, that] [i]t is a shame that he is this close to becoming a citizen[,] [and that the Court does not] know how all of this will affect that effort

on his part." (*Id*. at 34:23-35:01.)  Considering the mitigating factors present in Mr. Yu-Holguin's case, the Court sentenced him "to a term of custody of eight and a half months with credit for time served . . . [and] . . . a term of supervised release for three years with" special conditions.  (*Id*. at 47:17-23.)

The Court reminded Mr. Yu-Holguin of his right to appeal, subject to any waiver in his plea agreement.  (*Id.* at 40:19-21.)  In this instance, the Court reminded Mr. Yu-Holguin that he had agreed to waive his right to appeal if the Court imposed a sentence of 51 months or less.  (*Id.* at 40:21-22.) The Court further stated that validity of any waiver of Mr. Yu-Holguin's appellate rights would be a question for the court of appeals, and that if Mr. Yu-Holguin wished to file an appeal, he "must do so within 14 days of judgment being entered in [his] case."  (*Id*. at 40:23-41:01.)  Mr. Dubin confirmed that he would "file a timely Notice of Appeal" if Mr. Yu-Holguin chose to exercise his appellate rights.  (*Id.* at 41:08-13.)

### Procedural History

On January 28, 2015, the Court entered judgment convicting Mr. Yu-Holguin of Conspiracy to Commit Access Device Fraud, a Class D felony, in violation of 18 U.S.C. §§ 1029(b)(2) and (c)(1)(A)(ii).  (ECF No. 326, Judgment, at 1.)

## I.   The Appeal

On July 21, 2015, Mr. Yu-Holguin filed a notice of appeal.  (*See generally* ECF No. 386, Notice of Appeal.)  Mr. Yu-Holguin intended to argue on appeal that he received ineffective assistance of counsel at pleading because Mr. Dubin misinformed him of the immigration consequences of his guilty plea.  *Lajud-Pena (Yu-Holguin)*, No. 15-2303 (ECF No. 21, Brief & Appendix, at 10-16).  Mr. Yu-Holguin asserted that this ineffective assistance rendered his appeal waiver unenforceable.  Although Mr. Yu-Holguin acknowledged the untimeliness of his appeal, he asked the Second Circuit to accept it in the interest of justice on the grounds that Mr. Dubin had allegedly failed to timely file a requested appeal.  (*Id.* at 17.)  The Government did not file its opposition brief, but instead moved to dismiss Mr. Yu-Holguin's appeal as untimely.  *Lajud-Pena (Yu-Holguin)*, No. 15-2303 (ECF No. 28, Motion to Dismiss.)

On July 19, 2016, the Second Circuit issued a Summary Order granting the Government's motion to dismiss Mr. Yu-Holguin's appeal as untimely.  (ECF No. 402, Order of United States Court of Appeals.)  But for reasons stated in the summary order for the related case *United States v. Lajud-Pena (Diaz)*, No. 15-3915 (2d Cir.), the Second Circuit ordered "that the case be remanded to the district court with instructions to convert the Appellant's notice of appeal (as supplemented by his brief

claiming ineffectiveness of counsel resulted in his failure to timely file his appeal) into a petition for habeas corpus, after first providing '[Mr. Yu-Holguin] the opportunity to withdraw the [notice] rather than have it so recharacterized.'" (*Id.* (quoting *Adams v. United States*, 155 F.3d 582, 584 (2d Cir. 1998).) The Second Circuit issued its mandate on August 10, 2016. (ECF No. 403, Mandate of USCA.)

## II. The Instant Petition

On July 28, 2016, in accordance with the Second Circuit's directive, the Court ordered Mr. Yu-Holguin to indicate whether he wished to withdraw his notice of appeal, rather than having it re-characterized as a petition for habeas corpus relief. (ECF Docket Order, July 28, 2016.) Mr. Yu-Holguin did not withdraw his notice of appeal, and separately consented to its conversion into a habeas petition. *Lajud-Pena (Yu-Holguin)*, No. 15-2303 (2d Cir.) (ECF No. 62, Letter from Petitioner) ("[A]ppellant Yu[-]Holguin consents to the conversion of his Notice of Appeal into a petition for habeas corpus."). The Court then converted Mr. Yu-Holguin's notice of appeal into a petition to vacate his judgment of conviction pursuant to 28 U.S.C. § 2255 and directed the parties to submit a joint briefing schedule for supplemental briefing on the

petition, to bolster the arguments raised before the Second
Circuit.[2]  (ECF Docket Order Aug. 12, 2016.)

On February 14, 2017, Mr. Yu-Holguin's habeas counsel,
B. Alan Seidler ("Mr. Seidler"), filed a Verified Declaration in
support of Mr. Yu-Holguin's petition for habeas relief.  (ECF
No. 425, Declaration ("Seidler Decl.").)  Mr. Seidler argued
that Mr. Dubin provided ineffective assistance of counsel: (1)
at pleading, by misinforming Mr. Yu-Holguin of the immigration
consequences of his plea (specifically, by informing him that
his crime of conviction would not qualify as an "aggravated
felony" for immigration purposes if he received a sentence of no
more than one year in custody); (2) at sentencing, for
unspecified reasons; and (3) in failing to file a requested
appeal.  (*Id.* ¶¶ 1, 8.)

On November 19, 2019, on court order, Mr. Dubin
submitted a sworn affirmation responding to the allegations made
in Mr. Seidler's declaration.  (ECF No. 441, Dubin Affirmation
("Dubin Aff.").)  Mr. Dubin affirms that he never advised Mr.
Yu-Holguin that the charged access device fraud was not an
aggravated felony, or that a sentence of no more than one year
would automatically prevent him from being deported.  (*Id.* ¶ 5.)

---

[2] Mr. Yu-Holguin's filings with the Second Circuit make identical legal
arguments and factual assertions to those made before this Court.  *See Lajud-
Pena (Yu-Holguin)*, No. 15-2303 (2d Cir.) (ECF No. 21, Brief & Appendix; ECF
No. 37, Opposition to Motion to Dismiss).

Rather, Mr. Dubin affirms he only advised Mr. Yu-Holguin that "in some felony cases, where a defendant was sentenced to less than one-year imprisonment, immigration might not deport him," but that there "was no guarantee that would happen in [Mr. Yu-Holguin's] case." (*Id.* ¶ 6.) Mr. Dubin cited the plea transcript as evidence that Mr. Yu-Holguin was aware that his plea could lead to deportation. (*Id.*) Mr. Dubin then summarized the "overwhelming" evidence tending to establish Mr. Yu-Holguin's guilt and the large disparity between the advisory Guidelines range applicable to the offense to which Mr. Yu-Holguin pleaded guilty and the much lower sentence Mr. Dubin secured for his client. (*Id.* ¶¶ 9-11.)

With respect to filing a notice of appeal, Mr. Dubin affirms that "[Mr. Yu-Holguin] never asked [him] to file a Notice of Appeal." (*Id.* ¶ 4.) "If [Mr. Yu-Holguin] had [made such a request], [Mr. Dubin says he] would have filed a Notice of Appeal and would have asked to be relieved because the only basis for appeal would be ineffective assistance of counsel." (*Id.*)

The Court granted Mr. Yu-Holguin leave to respond to Mr. Dubin's affidavit by filing a personal affidavit setting forth the specific circumstances of (1) Mr. Yu-Holguin's conversations with Mr. Dubin about the immigration consequences of his guilty plea and (2) Mr. Yu-Holguin's conversations with

Mr. Dubin regarding Mr. Yu-Holguin's alleged request that Mr. Dubin file a notice of appeal. (ECF Dkt. Order Jan. 17, 2020.) The Court's order cited caselaw indicating that "bare assertions [like those made in Mr. Seidler's declaration], offered without detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel." (*Id.* (quoting *United States v. Rosario*, No. 13-CR-514 (NRB), 2015 WL 4629453, at *6 (S.D.N.Y. Aug. 4, 2015)).)

In response to the Court's January 17, 2020 order, on January 23, 2020, Mr. Yu-Holguin filed an affidavit which largely parroted Mr. Seidler's declaration. (ECF No. 446, Yu-Holguin Affidavit ("Yu-Holguin Aff.").) Mr. Yu-Holguin did not add any additional details to corroborate his account of his conversations with Mr. Dubin, such as the date, place, and circumstances. Nor did Mr. Yu-Holguin provide any supporting documentation, facts and circumstances, or other evidence tending to support his bare assertion that he would not have pleaded guilty but for Mr. Dubin's allegedly erroneous advice or that he asked Mr. Dubin to file a notice of appeal on his behalf. All Mr. Yu-Holguin says on this matter is that "[he] would not have plead[ed] guilty had he been informed of the consequent deportation [resulting from the fact that he sustained an aggravated felony]" and that "[a]fter sentencing[,]

14

[he] promptly . . . instructed [his] then[-]attorney to file a Notice of Appeal."  (Seidler Decl. ¶ 9; Yu-Holguin Aff. ¶ 8.)

## LEGAL STANDARD

Title 28 U.S.C. § 2255 authorizes a federal prisoner to move to vacate his judgment of conviction "upon the ground that the sentence was imposed in violation of [the Constitution], or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The Court "shall vacate and set the judgment aside" if the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  *Id*. § 2255(b).  Relief under § 2255 is narrowly limited out of "'respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place.'"  *Davis v. United States*, No. 13-cr-986, 2019 U.S. Dist. LEXIS 60740, at *5 (S.D.N.Y. Apr. 9, 2019) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

## Discussion

Mr. Yu-Holguin filed the instant motion to vacate his judgment of conviction based on ineffective assistance of counsel.  Mr. Yu-Holguin argues that Mr. Dubin provided him with

ineffective assistance of counsel in connection with: (1) at pleading, by misinforming Mr. Yu-Holguin of the immigration consequences of his plea; (2) at sentencing, for unspecified reasons; and (3) in failing to file a requested appeal. For the reasons stated below, the Court is not persuaded by Mr. Yu-Holguin's arguments and denies his request for relief.

## I.     Preliminary Questions

### A. Waiver

The Court begins with a brief discussion of whether Mr. Yu-Holguin's collateral attack waiver bars the instant petition. "A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016). A waiver is knowing if the "defendant fully understood the potential consequences of his waiver." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). "[P]lea agreements are to be applied narrowly and construed strictly against the government," and "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [this Circuit's] jurisprudence." *Sanford*, 841 F.3d at 580 (internal quotation marks and citations omitted). "[A]ppellate and collateral attack waivers may be set aside when a defendant challenges 'the constitutionality of the process by which he waived those rights.'" *United States v. Jude*, No. 15-

CR-355 (JFK), 2019 WL 3500284, at *2 (S.D.N.Y. Aug. 1, 2019)

(quoting *Khan v. United States*, No. 07-CR-711 (LAP), 2014 WL

2111677, at *6-7 (S.D.N.Y. Apr. 28, 2014)).

Mr. Yu-Holguin "agree[d] not to file an appeal or

otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or

any other provision, the conviction or sentence in the event

that the Court impose[d] a term of imprisonment of 51 months or

below."  (Plea Ag. ¶ 4.)  The plea colloquy indicates that Mr.

Yu-Holguin fully understood the potential consequences of his

waiver.  *See United States v. Hernandez*, 242 F.3d 110, 112 (2d

Cir. 2001) (holding that Courts may rely on "the defendant's

sworn statements, made in open court . . . , that he understood

. . . that he was waiving his right to appeal a sentence below

[the stipulated maximum sentence]").  Because the Court imposed

a sentence of roughly eight months in custody, Mr. Yu-Holguin is

barred from collaterally challenging his attorney's performance

in matters not related to the constitutionality of the process

by which he waived his rights, such as Mr. Dubin's conduct at

sentencing.  *Northover v. United States*, No. 11-CR-630 (KMK),

2019 WL 6173704, at *3 (S.D.N.Y. Nov. 19, 2019) ("[A] claim of

ineffective assistance is waived when it relates to counsel's

performance at the sentence.").

Mr. Yu-Holguin's waiver, however, does not bar him

from arguing that Mr. Dubin provided ineffective assistance of

counsel at pleading (contending his plea was not voluntary and knowing), *United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings"), or that Mr. Dubin failed to file a requested appeal, *Riggi v. United States*, No. 04-CV-7852 (JSR), 2007 WL 2245595, at *7 (S.D.N.Y. Aug. 6, 2007) ("[T]he waiver of rights under section 2255 does not bar . . . a claim [that counsel failed to file a requested appeal]."); *Campusano v. United States*, 442 F.3d 770, 775 (2d Cir. 2006) (claim of ineffective assistance based on failure to file a notice of appeal unaffected by plea agreement waiving right to appeal). The Court will, consequently, address these claims on the merits.

### B. Evidentiary Hearing

The next question is whether the Court can address Mr. Yu-Holguin's habeas petition on the record before the Court. "In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (citing 28 U.S.C. § 2255). But "the filing of a motion pursuant to § 2255 does not automatically

entitle the movant to a hearing." *Id.* "[T]hat section does not
imply that there must be a hearing where the allegations are
'vague, conclusory, or palpably incredible.'" *Id.* (quoting
*Machibroda 131 v. United States*, 368 U.S. 487, 495 (1962)).
"[T]he motion must set forth specific facts supported by
competent evidence, raising detailed and controverted issues of
fact that, if proved at a hearing, would entitle [the movant] to
relief." *Id.* (citing *Machibroda*, 368 U.S. at 494; *United States
v. Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987)).

It is "within the district court's discretion to
determine the scope and nature of a hearing." *Raysor v. United
States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Chang v. United
States*, 250 F.3d 79, 85-86 (2d Cir. 2001)). When the judge who
tried the underlying proceedings also presides over a § 2255
motion, a full-blown evidentiary hearing may not be necessary.
*Puglisi v. United States*, 586 F.3d 209, 214-15 (2d Cir. 2009)).
The Court may instead "consider the 'trial record, letters,
documents, exhibits, affidavits and written interrogatories' and
may adopt a 'middle road approach, declining to hold a hearing
and deciding disputed facts on the basis of written
submissions.'" *Rosario v. United States*, No. 17-CR-0027 (LTS),
2019 WL 5260784, at *3 (S.D.N.Y. Oct. 17, 2019) (quoting *Pham v.
United States*, 317 F.3d 178, 184 (2d Cir. 2003)); *see also Wang
v. United States*, 458 F. App'x 44, 45 (2d Cir. 2012) (summary

order) ("[T]he District Court did conduct an evidentiary hearing, albeit one limited to the sworn, written submissions of [petitioner], his former counsel, and the interpreters.").

The Court considered whether an evidentiary hearing would be warranted in this instance. The Court elected to begin with a "middle road" approach by soliciting affidavits. The Court directed Mr. Dubin to respond to the assertions contained in Mr. Seidler's declaration, namely, that Mr. Dubin misinformed Mr. Yu-Holguin of the immigration consequences of his plea and failed to file a requested appeal. Mr. Dubin responded with a detailed and credible affidavit which is supported by, among other things, the various facts in the record (detailed below) contradicting Mr. Yu-Holguin's assertions.

The Court then directed Mr. Yu-Holguin, represented by counsel, to file an additional affidavit providing factual enhancement to his otherwise bare and conclusory allegations regarding his conversations with Mr. Dubin about (1) the immigration consequences of his guilty plea and (2) filing a notice of appeal. Mr. Yu-Holguin's responsive affidavit merely reiterated the conclusory assertions first made in Mr. Seidler's declaration and provided none of the requested details surrounding Mr. Yu-Holguin's conversations with Mr. Dubin or any corroborating evidence. The undersigned judge is also familiar with Mr. Yu-Holguin and Mr. Dubin and the facts and history of

this case.  *Raysor*, 647 F.3d at 494.  Therefore, no full-blown

evidentiary hearing is necessary, as it would add "little to

nothing" to the Court's determination of the instant petition.

*See, e.g.*, *Beckford v. United States*, No. 13-CV-2208 (DLI), 2017

WL 4286615, at *3 (E.D.N.Y. Sept. 26, 2017) (quoting *Chang*, 250

F.3d at 86).

## II.  **Merits**

Having addressed the foregoing preliminary matters,

the Court now turns to the merits of Mr. Yu-Holguin's argument

that Mr. Dubin provided ineffective assistance of counsel.  "In

all criminal prosecutions, the accused shall enjoy the right . .

. to have the Assistance of Counsel for his defence."  U.S.

Const. Amend. VI.  The accused's right to effective assistance

of counsel extends to all critical stages of criminal

proceedings, including entry of a guilty plea, *Hill v. Lockhart*,

474 U.S. 52, 58 (1985), sentencing, *Glover v. United States*, 531

U.S 198 (2001), and filing a notice of appeal, *Roe v. Flores*,

528 U.S. 470, 477 (2000).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the

United States Supreme Court articulated a "highly demanding" and

"rigorous" standard for ineffective assistance of counsel

claims.  *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).

The petitioner must establish both (1) "that his lawyer's

performance 'fell below an objective standard of

reasonableness'" (the "performance prong") and (2) "that 'there
is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different'" (the "prejudice prong").  *United States v.
Abad*, 514 F.3d 271, 275 (2d Cir. 2008) (quoting *Strickland*, 466
U.S. at 688, 694).  "[T]he great majority of habeas petitions
that allege constitutionally ineffective counsel founder on that
standard."  *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir.
2001).  A court need not address the *Strickland* prongs in a
particular order or even address both prongs "if the defendant
makes an insufficient showing on one."  *Strickland v.
Washington*, 466 U.S. at 697; *Parker v. Ercole*, 666 F.3d 830, 834
(2d Cir. 2012) (same).

        To meet *Strickland*'s performance prong, a petitioner
must show that his counsel's performance fell below an objective
standard of reasonableness.  Courts "indulge a strong
presumption that counsel's conduct falls within the wide range
of reasonable professional assistance."  *Strickland*, 466 U.S. at
689.  They examine the reasonableness of counsel's actions,
keeping in mind that "[c]onstitutionally effective counsel
embraces a 'wide range of professionally competent assistance,'
and 'counsel is strongly presumed to have rendered adequate
assistance and made all significant decisions in the exercise of
reasonable professional judgment.'"  *Greiner v. Wells*, 417 F.3d

305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

Courts must do their best to "eliminate the distorting effects

of hindsight" (*id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408

(2005)) and "apply a 'heavy measure of deference to counsel's

judgments'" (*id.* (quoting *Strickland*, 466 U.S. at 691)).

To meet *Strickland*'s prejudice prong, a petitioner

must establish a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*,

466 U.S. at 694. Merely showing that counsel's errors had "some

conceivable effect" on the outcome is not enough to satisfy the

prejudice prong, but "a defendant need not show that counsel's

deficient conduct more likely than not altered the outcome in

the case." *Id*. at 693.

A. Ineffective Assistance – Pleading

Mr. Yu-Holguin first challenges Mr. Dubin's alleged

provision of incorrect information regarding the consequences of

his guilty plea. A defense counsel's failure to inform a

defendant that a guilty plea carries a risk of deportation may

constitute ineffective assistance of counsel. *Padilla v.

Kentucky*, 559 U.S. 356, 374 (2010); *United States v. Couto*, 311

F.3d 179, 188 (2d Cir. 2002) ("[A]n affirmative

misrepresentation by counsel as to the deportation consequences

23

of a guilty plea is . . . objectively unreasonable."), *abrogated on other grounds by Padilla*, 559 U.S. 356. "[W]here the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness." *United States v. Al Halabi*, 633 F. App'x 801, 803 (2d Cir. 2015) (citing *Padilla*, 559 U.S. at 369) (performance objectively unreasonable where counsel advised client he "may" be deported when deportation was mandatory for the offense to which client pleaded guilty). Regardless of whether Mr. Dubin's performance fell below an objective standard of reasonableness, which is not a foregone conclusion,[3] Mr. Yu-Holguin has not carried his burden of establishing prejudice.

---

[3] Mr. Dubin denies making erroneous representations to Mr. Yu-Holguin about the consequences of pleading guilty to the charged access device fraud conspiracy. But Mr. Dubin's statements at Mr. Yu-Holguin's sentencing support the petitioner's contention that Mr. Dubin appeared to believe the length of the sentence imposed could affect whether Mr. Yu-Holguin would be deported. A lawyer's misunderstanding, communicated to a client, as to the immigration consequences of a plea may constitute ineffective assistance of counsel. *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002). A petitioner's affirmations during his plea allocution as to the actual consequences of his guilty plea "preclude any argument that he was uninformed or misinformed about the immigration consequences of his guilty plea," *see United States v. Papadakos*, 729 F. App'x 41, 46 (2d Cir. 2018), *cert. denied sub nom. Zografidis v. United States*, 139 S. Ct. 166 (2018) ("[The petitioner's] plea agreement informed him that deportation was 'presumptively mandatory,' and [the petitioner] confirmed in open court that he had read the plea agreement and reviewed it with his attorney."). Mr. Yu-Holguin made such affirmations in his plea agreement (Plea Ag. ¶¶ 4, 14) and at his plea hearing (Plea Tr. at 10:01-17), "weigh[ing] heavily against any claim that [he] did not understand the deportation consequences of his guilty plea," *United States v. Nataniel*, No. 15-cr-588(MKB), No. 17-cv-7605(MKB), 2019 U.S. Dist. LEXIS 25187, at *16. The Court need not determine whether Mr. Dubin's

"[A] petitioner facing deportation as a result of a guilty plea can demonstrate prejudice by establishing a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Nataniel*, 2019 U.S. Dist. LEXIS 25187, at *13 (E.D.N.Y. Feb. 13, 2019) (quoting *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017)). The petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372 (citing *Roe*, 528 U.S. at 480, 486). The court must consider "all relevant factors" in considering whether a decision to reject the government's plea offer would have been rational, *Gonzalez*, 722 F.3d at 132, including "whether pleading guilty gained [the petitioner] a benefit in the form of more lenient sentencing," and "whether the defendant advanced any basis for doubting the strength of the government's case against him," *Halabi*, 633 F. App'x at 802 (quoting *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013)).

"In determining whether a petitioner has made the requisite showing, '[c]onclusory allegations that [a petitioner] would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*.'"

---

performance fell below an objective standard of reasonableness, however, as Mr. Yu-Holguin has failed to establish prejudice, as required by *Strickland*.

*Francis v. United States*, No. 12-CV-1362 (AJN), 2013 U.S. Dist.
LEXIS 25470, at *12 (S.D.N.Y. Feb. 25, 2013) (quoting *Scott v.
Superintendent*, No. 03–CV–06383, 2006 WL 3095760, *9 (E.D.N.Y.
Oct. 31, 2006)). The Second Circuit requires "some objective
evidence other than the petitioner's assertions to establish
prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir.
2003) (finding "objective" evidence of prejudice resulting from
alleged failure to convey plea offer to include "the undisputed
sentencing disparity of at least 113 months between the high end
of the government's [allegedly unconveyed] plea offer and [the
petitioner's] sentence after a trial conviction"); *see also
Zhang v. United States*, 543 F. Supp. 2d 175, 185 (E.D.N.Y.
2008). "Particularly where there is extensive evidence of his
guilt, the petitioner must articulate a convincing basis on
which he would have foregone the substantial benefit resulting
from his plea and risked a harsher sentence at trial." *Gomez v.
United States*, No. 10-CV-1886 (CBA), 2013 U.S. Dist. LEXIS 1507,
at *16 (E.D.N.Y. Jan. 4, 2013) (internal quotation marks
omitted); *see also Francis*, 2013 U.S. Dist. LEXIS 25470, at *
12.

A petitioner may also satisfy *Strickland*'s prejudice
prong by showing that "there was a reasonable probability that
the petitioner could have negotiated a plea that did not impact
immigration status or that he would have litigated an available

defense." *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014) (discussing means of establishing prejudice in the plea context). The reviewing court must remember that a defendant has no right to be offered a plea, so the petitioner must "demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that had no adverse effect on the petitioner's immigration status." *Id.* (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012)).

ii. *Application*

Mr. Yu-Holguin argues that Mr. Dubin incorrectly advised him of the immigration consequences of his guilty plea. (Yu-Holguin Aff. ¶ 5.) Mr. Yu-Holguin alleges that at the time he pleaded guilty, Mr. Dubin advised him that his conviction would not qualify as an aggravated felony for immigration purposes if he received a sentence of no more than one year, making it such that his removal would not be "near mandatory." (*Id.* ¶ 6.) But this was incorrect, and, in Mr. Yu-Holguin's view, reflected Mr. Dubin's confusion of the standards for when fraud and theft offenses qualify as aggravated felonies. *Compare* 8 U.S.C. § 1101(a)(43)(M) (providing that "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" qualifies as an aggravated felony) *with* 8 U.S.C. § 1101(a)(43)(G) (providing that "a theft offense . . . for which the term of imprisonment [is] at least one year"

qualifies as an aggravated felony). Because of the loss amount at issue, Mr. Yu-Holguin's fraud offense automatically qualified as an aggravated felony. *See id.* Mr. Yu-Holguin makes the bare assertion that he would not have pleaded guilty to the charged access device fraud conspiracy had he known it qualified as an aggravated felony for immigration purposes, likely resulting in deportation. (Seidler Decl. ¶ 9.)

The Court agrees with the Government that Mr. Yu-Holguin cannot establish prejudice in connection with his entry of a guilty plea. Mr. Yu-Holguin has not presented any facts to explain or support his contention that he would have proceeded to trial or that rejecting his plea would have been rational under the circumstances.

*First*, Mr. Yu-Holguin has not shown that there was a reasonable probability that Mr. Dubin could have negotiated a plea deal which would which would not have impacted his immigration status. Mr. Yu-Holguin appears to suggest such an outcome could have been possible had Mr. Dubin negotiated a plea to a theft offense and secured a sentence of less than one year, or negotiated a plea to a fraud offense with a loss amount of less than $10,000. (*See* Yu-Holguin Aff. ¶ 6.)

With respect to the possibility of pleading guilty to a theft charge, the Court notes that the Government charged Mr. Yu-Holguin with one count, Conspiracy to Commit Access Device

Fraud.  (Ind. ¶ 10.)  No theft charge was cited in the indictment, nor is there any other indication that the Government would have agreed to amend the indictment or offer a plea to an information to allow Mr. Yu-Holguin to plead guilty to theft rather than fraud.  Indeed, Mr. Dubin noted there was never an offer from the Government which would have allowed Mr. Yu-Holguin to plead guilty to a theft offense.  (*Id.* ¶ 7.)

Nor has Mr. Yu-Holguin shown a reasonable probability that Mr. Dubin could have negotiated a plea to a fraud offense with a loss amount of less than $10,000.  *See, e.g.*, *Chhabra v. United States*, No. 09-CV-1028, 2010 U.S. Dist. LEXIS 118167, at *17-18 (S.D.N.Y. Nov. 3, 2010) (rejecting claim that counsel was ineffective for failing to negotiate a plea that would not have resulted in his deportation because petitioner failed to prove that the government would have "agree[d] to a plea bargain for less than what Petitioner readily admits was the actual amount of which he defrauded the Government"), *aff'd*, 720 F.3d 395 (2d Cir. 2013).  Mr. Yu-Holguin, as a member of the fraudulent withdrawal and cashing conspiracy, was responsible for the full loss amount of $2.7 million.  (Sentencing Tr. at 08:12-23.) Even if Mr. Yu-Holguin pleaded guilty to only the loss amount he concedes he individually caused, $60,000, the amount would still exceed the $10,000 floor and qualify as an aggravated felony.

There was, in short, no reasonable probability that Mr. Dubin could have negotiated a plea that did not affect Mr. Yu-Holguin's immigration status.

*Second*, Mr. Yu-Holguin has not established that he would have insisted on proceeding to trial without a plea deal which would have protected him from sustaining an aggravated felony.  Mr. Yu-Holguin's argument is cabined to the conclusory assertion in Mr. Seidler's declaration that he "would [not] have plead[ed] guilty had he been informed of the consequent deportation."  (Seidler Decl. ¶ 9.)  Mr. Yu-Holguin cites no objective evidence supporting the position that he would have rejected the Government's plea offer.  *See, e.g.*, *Gomez*, 2013 U.S. Dist. LEXIS 1507, at *17-18 ("[Petitioner] appears to rely on the presumption that the harshness of removal is in itself sufficient evidence that he would have jumped at any chance - even a small one - to avoid that certain result.  The fact of certain removal, however, does not, without more, constitute 'objective evidence' of what he was reasonably likely to do had he received accurate advice. . . .  [Petitioner] was informed by his attorney, his plea agreement, and [the judge] that deportation was at least a possible consequence of his plea, and he nonetheless accepted the government's . . . agreement.").

Taking Mr. Yu-Holguin's statements as true, at the time he pleaded guilty, he understood that his crime of

conviction would qualify as an aggravated felony for immigration purposes if he received a sentence of more than one year. (Yu-Holguin Aff. ¶ 6.) Despite this fact, Mr. Yu-Holguin elected to plead guilty pursuant to a plea agreement which expressly notified him that he faced an estimated advisory Guidelines range of 37 to 46 months in custody. (Plea Ag. ¶ 2.) Mr. Yu-Holguin understood the applicable Guidelines range. (Plea Tr. at 15:03-10.) Mr. Yu-Holguin further indicated that no one made any promises to him about what sentence he would receive. (*Id.* at 17:17-18:06.) Thus, the record makes clear that even if Mr. Yu-Holguin believed he would not be deported if he received a jail sentence of no more than one year, he still pleaded guilty with no reasonable expectation that he would receive such a sentence. *See, e.g.*, *United States v. Seepersad*, 674 F. App'x 69, 71 (2d Cir. 2017) ("Even assuming arguendo that Seepersad's counsel wrongly advised him that he would not be deported if he was sentenced to less than a year, Seepersad cannot demonstrate the requisite prejudice. The record makes clear that Seepersad had no reasonable expectation that he would, in fact, be sentenced to less than a year. The sentencing guidelines for his pled-to crime provided for 12 to 18 months' imprisonment (miscalculated as 15 to 21 months in the plea agreement), and Seepersad waived his right to appeal any sentence under 21 months."). In fact, Mr. Yu-Holguin represented that he

"want[ed] to plead guilty regardless of any immigration consequences that [his] plea may entail, *even if the consequence is [his] automatic removal from the United States*." (Plea Ag. ¶ 14 (emphasis added).)

*Third*, even if Mr. Yu-Holguin might not have pleaded guilty to the charged access device fraud conspiracy had he known that it would qualify as an aggravated felony, he has made no showing that it would have been rational to proceed to trial. The Government's case against Mr. Yu-Holguin was "overwhelming." *Bhindar v. United States*, No. 11-CV-3911 (LAP), 2013 WL 171084, at *5 (S.D.N.Y. Jan. 16, 2013) (finding that "it is simply not rational that [p]etitioner would have rejected the plea agreement and instead, insisted on going to trial," where "the [g]overnment had a plethora of evidence establishing [his] participation in the conspiracy"); *Francis v. United States*, No. 12-CV-1362 (AJN), 2013 WL 673868, at *4 (S.D.N.Y. Feb. 25, 2013) (finding evidence of guilt overwhelming where evidence included, *inter alia*, "time-stamped surveillance videos showing [petitioner] engaging in the criminal conduct"). "[T]he [G]overnment obtained transaction logs and surveillance images from banks at which illegal withdrawals took place." (Dubin Aff. ¶ 10.) "Using [Mr. Yu-Holguin's] New York State DMV photographs as well as Facebook images, the [G]overnment

positively identified [Mr. Yu-Holguin] in multiple surveillance images of illegal cash withdrawals." (*Id.*)

Mr. Yu-Holguin does not offer any defense which he could have presented at trial or otherwise identify any weaknesses in the Government's case, neither in his attorney's declaration nor in response to Mr. Dubin's affidavit summarizing the Government's evidence. There is no evidence that it would have been rational for Mr. Yu-Holguin to have chosen to proceed to trial, or that trial would have led to anything but conviction and, as a consequence, deportation. *See Zhang*, 543 F. Supp. 2d at 185; *Francis*, 2013 WL 673868, at *4 (S.D.N.Y. Feb. 25, 2013) ("[T]he evidence against Defendant was strong, he acknowledges his guilt, and it is more than reasonable to assume that he would have been found guilty and faced the same immigration consequences had he proceeded to trial.").

*Finally*, Mr. Yu-Holguin cannot credibly claim that he was prejudiced by any misinformation from Mr. Dubin. As noted above, Mr. Yu-Holguin's plea agreement stated that "because [Mr. Yu-Holguin] is pleading guilty to a violation of 18 U.S.C. § 1029(b)(2), removal is presumptively mandatory." (Plea Ag. ¶ 14.) Mr. Yu-Holguin reviewed and signed the plea agreement which noted that he wished to plead guilty "even if the consequence is [his] automatic removal from the United States." (*Id.*) At the plea hearing, Mr. Yu-Holguin indicated that he

discussed the removal provision with his attorney and understood
he could be subject to removal.  (Plea Tr. at 12:16-13:12.)  Mr.
Yu-Holguin's own representations, and the Court's admonishment
of the immigration consequences of his guilty plea, remedy any
potential prejudice from allegedly erroneous information
provided by Mr. Dubin.  *See, e.g.*, *Whyte v. United States*, No.
08-CR-1330 (VEC), 2015 U.S. Dist. LEXIS 103145, at \*29 (S.D.N.Y.
Aug. 6, 2015) (noting that if the court had advised the
petitioner that he would be subject to removal, any "prejudice
would have been cured by the Court's advice because the Court's
statement of the law would have superseded his attorney's
erroneous advice").

### B. Ineffective Assistance – Sentencing

Mr. Yu-Holguin next makes the conclusory statement
that he received ineffective assistance of counsel at
sentencing.  (Yu-Holguin Aff. ¶ 1.)  Mr. Yu-Holguin does not
explain how he believes Mr. Dubin's submissions and
representation at his sentencing were deficient.  Even if Mr.
Yu-Holguin had not waived this argument, as noted above, it is
not clear to the Court what, if anything, Mr. Yu-Holguin could
challenge with regards to Mr. Dubin's representation during
sentencing.

*First*, an attorney's performance at sentencing falls
below an objective standard of reasonableness where the attorney

fails to follow through with responsibilities that are expected at the sentencing stage. *See, e.g.*, *Gonzalez*, 722 F.3d 118 (failing to meet with defendant until the day of sentencing and to submit a sentencing memorandum); *Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (failing to challenge error in the PSR's computation of petitioner's offense). Mr. Dubin participated in all stages of sentencing, submitted a persuasive sentencing memorandum on Mr. Yu-Holguin's behalf, and secured a sentence for his client of just over eight months. This eight-month sentence was substantially lower than the advisory Guidelines range of 37 to 46 months. Against these facts, and without any further explanation from Mr. Yu-Holguin as to how Mr. Dubin's performance at sentencing was deficient, the Court cannot conclude that Mr. Dubin's performance fell below an objective standard of reasonableness.

*Second*, a petitioner is prejudiced if he can show "a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." *Gonzalez*, 722 F.3d at 130 (citing *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012)); *see also Glover v. United States*, 531 U.S. 198, 203 (2001) (holding that prejudice is shown where a court errs in a Guidelines determination, about which counsel did not argue, and as a result, the defendant's sentence was increased). Mr. Dubin stressed the immigration consequences of Mr. Yu-

Holguin's conviction and, even if erroneously, used that as a
basis to secure an eight-month sentence, roughly one-fifth of
the advisory Guidelines range of 37 to 46 months.  The Court is
hard pressed to imagine how Mr. Dubin might have secured a lower
sentence for his client.

###### C. Ineffective Assistance - Notice of Appeal

Mr. Yu-Holguin's final argument is that Mr. Dubin
failed to file a requested appeal.  "When a defendant asks his
lawyer to file an appeal and the lawyer fails to do so, the
lawyer has been *per se* constitutionally ineffective."  *Beckford*,
2017 WL 4286615, at *2 (citing *Restrepo v. Kelly*, 178 F.3d 634,
640 (2d Cir. 1999)).  "This of course is only true when the
court finds that trial counsel in fact failed to file a
requested notice of appeal."  *Id.* (citing *United States v.
Moreno-Rivera*, 472 F.3d 49, 52 (2d Cir. 2006) ("What matters for
purposes of that claim is whether [the petitioner's] trial
counsel 'fail[ed] to file a *requested* appeal.'")).

As noted above, the district court must ordinarily
"hold a hearing 'to determine whether the client requested the
appeal . . . without assessing the merits of the requested
appeal.'"  *Daragjati v. United States*, 598 F. App'x 50, 52 (2d
Cir. 2015) (citing *Campusano v. United States*, 442 F.3d 770, 776
(2d Cir. 2006)).  Given the Court's knowledge of the record in
this action and the affidavits submitted by Mr. Yu-Holguin and

Mr. Dubin, however, the Court concludes that the presentation of live testimony would add "little or nothing" to the written submissions and is not necessary to evaluate Mr. Yu-Holguin's claims. *See Chang*, 250 F.3d at 85; *see also, e.g.*, *Lejhanec v. United States*, No. 99-cv-4387 (ILG), 1999 U.S. Dist. LEXIS 20576, at *27-28 (E.D.N.Y. Nov. 29, 2999) ("[T]he Court is faced with nothing more to support [petitioner's] claim of ineffective assistance for failure to file an appeal than [petitioner's] 'bare, unsubstantiated, thoroughly self-serving, and none too plausible statement' that 'shortly after sentencing' he requested that [trial counsel] file a notice of appeal on his behalf, and [trial counsel] failed to do so. Against an affirmation made under penalty of perjury by an officer of the Court that no such request was made, and in the absence of any other evidence to suggest that petitioner might actually have suffered a deprivation of his constitutional right to effective representation by trial and appellate counsel, [petitioner's] assertion is simply not sufficient to justify the investment of judicial resources that a hearing would require.").

Judge Irizarry's recent decision in *Beckford v. United States* is instructive. In *Beckford*, the petitioner alleged that he asked his counsel to file a notice of appeal but that counsel failed to do so. 2017 WL 4286615, at *2. The petitioner submitted an affidavit stating that he "ma[d]e it clear to

counsel" that he wanted an appeal and that "[c]ounsel did assure [him] that he would file the notice of appeal on [his] behalf." *Id.* at *3. The petitioner's affidavit "d[id] not include any other details surrounding his request that [counsel] file a notice of appeal." *Id.* Counsel responded through a one-page declaration stating that "[a]t no point did [the petitioner] request that [he] file a notice of appeal on his behalf." *Id.* The petitioner replied to counsel's declaration but "d[id] not add further detail regarding his request that [counsel] file a notice of appeal." *Id.*

On this record, Judge Irizarry concluded that a hearing was not necessary. The petitioner "provide[d] only the conclusory assertion that he '[made] it clear to counsel that 'yes' [he] wanted to appeal.'" *Id.* (quoting the petitioner's affidavit). Judge Irizarry noted that "'[s]uch bare assertions, offered without detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel.'" *Id.* at *4 (quoting *Rosario*, 2015 WL 4629453, at *6). Moreover, "[e]ven if [the] [p]etitioner's sworn and unsworn statements could be construed as describing the content and nature of his conversations with his counsel regarding appeal — which is doubtful — [the] [p]etitioner provide[d] no contemporaneous evidence of his request, or any communications regarding appeal

in the many months that followed his counsel's alleged failure to file a notice of appeal, or an explanation of the grounds on which he would have expected his counsel to appeal." *Id.* Judge Irizarry thus rejected the petitioner's request for relief. *Id.*

Here, as in *Beckford*, the totality of the evidence in the record supports a finding that Mr. Yu-Holguin did not request an appeal. Mr. Yu-Holguin initially claimed through counsel that Mr. Dubin failed to file a requested appeal. (Seidler Decl. ¶ 8.) Mr. Seidler's declaration set forth no specific details of Mr. Yu-Holguin's alleged conversations with Mr. Dubin regarding a notice of appeal. (*See generally id.*) Even if Mr. Seidler had done so, he does not have personal knowledge of conversations between Mr. Yu-Holguin and Mr. Dubin. Mr. Dubin responded, under oath, that "[Mr. Yu-Holguin] never asked [him] to file [a] Notice of Appeal," and that "[i]f [Mr. Yu-Holguin had requested an appeal], [Mr. Dubin] would have filed a Notice of Appeal and would have asked to be relieved because the only basis for [an] appeal would be ineffective assistance of counsel." (Dubin Aff. ¶ 4.)

The Court granted Mr. Yu-Holguin leave to respond and advised that bare assertions were insufficient to overcome a credible affidavit by counsel. (ECF Dkt. Order, Jan. 17, 2020.) Despite being afforded this opportunity to provide additional details or corroborating evidence, Mr. Yu-Holguin's response did

nothing more than parrot the bare assertions contained in Mr. Seidler's affidavit. (*See* Yu-Holguin Aff. ¶¶ 7-8.)

Conclusory assertions like Mr. Yu-Holguin's, without detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel. *See, e.g.*, *Garcia v. United States*, No. 01-CR-945, 2008 WL 683661, at *5 (S.D.N.Y. Mar. 14, 2008), *report and recommendation adopted*, No. 04-CV-6020 (RMB) (GWG), 2008 WL 2446840 (S.D.N.Y. June 17, 2008) (rejecting petition where petitioner "said only in the most conclusory terms that he instructed his counsel to file a notice of appeal," without "detail[ing] the content or nature of such conversations" or "provid[ing] any contemporaneous documents making the request or documents after the deadline for filing an appeal that reflect his complaints about [counsel's] failure to file the notice"); *Rosario*, 2015 WL 4629453, at *6 (same); *United States v. Hernandez-Uberia*, No. 07-CR-378(SHS), 2010 U.S. Dist. LEXIS 48256, at *5-6 (S.D.N.Y. May 11, 2010) (denying petition where counsel "submitted an affidavit to this Court on this motion stating specifically that [the defendant] 'never informed me he wanted me to file a Notice of Appeal' and that '[i]f defendant had done so I would have filed that Notice of Appeal for him'"); *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 253 (E.D.N.Y. July 29, 2009) (same).

The circumstances of Mr. Yu-Holguin's situation fail to establish that he sought an appeal. Mr. Yu-Holguin received a sentence substantially lower than the advisory Guidelines range, making it unlikely that Mr. Yu-Holguin would seek an appeal. *See, e.g.*, *Beckford*, 2017 WL 4286615, at *5 ("[T]he Court also considers the unlikelihood that a petitioner who faced a potentially lengthy sentence at trial and received a significant reduction by pleading guilty would pursue an appeal."); *Davila-Bajana v. United States*, No. 01-CV-7329 (RR), 2002 WL 2022646, at *4 (E.D.N.Y. June 26, 2002) (declining to hold an evidentiary hearing considering the "extreme unlikelihood that a defendant would wish to appeal a conviction that reduced a 151-188 month sentence to 60 months"). Mr. Yu-Holguin also waived his right to appeal in the event the Court imposed a sentence of less than 51 months, as occurred here. *Garcia*, 2008 WL 683661, at *5 ("[U]nlike the situation of a trial, here there is a plea agreement that specifically waives the right to appeal, providing further evidence that [the petitioner] would not have had any reason to ask [his counsel] to file an appeal.").

Mr. Yu-Holguin did not specify where and when he asked Mr. Dubin to appeal, or the circumstances of the alleged conversation(s) on this topic, nor did he detail any attempts to follow up with Mr. Dubin about the purportedly requested appeal

for many months.  *See, e.g.*, *Nicholson v. United States*, 566 F.
Supp. 2d 300, 305 (S.D.N.Y. 2008) ("[The petitioner] makes no
mention of what efforts, if any, he made during the intervening
eight months to ascertain whether in fact a notice had been
filed, or to inquire about the status of any appeal.
[Counsel's] Affirmation denies that [the petitioner] made such a
request and says nothing about receiving any inquiry from
[counsel] concerning the matter.  It would be reasonable to
infer that in regards to a matter of such great import governed
by such a short deadline, a person who has instructed counsel to
file an appeal would, at minimum, want to know whether the
request was carried out and make some reasonably prompt effort
to obtain information about its status.").  Mr. Yu-Holguin also
provides no information as to how or when he discovered that Mr.
Dubin's advice regarding the consequences of his guilty plea was
incorrect.  This is notable because Mr. Yu-Holguin claims this
was the issue he sought to raise on appeal.  (*See* Yu-Holguin
Aff. ¶ 5.)

        The Court finds that Mr. Yu-Holguin has not
established that he asked Mr. Dubin to file an appeal.  Mr. Yu-
Holguin's claim that Mr. Dubin was ineffective for failing to
file an appeal is denied.

## Conclusion

For the reasons stated above, Mr. Yu-Holguin's § 2255 petition is DENIED in its entirety.  Because Mr. Yu-Holguin has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The Clerk of Court is respectfully directed to enter judgment in favor of Respondent and close the case.

**SO ORDERED.**

Dated:     February 18, 2020
           Brooklyn, New York

_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge